## THORLEY v. PABST BREWING CO.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

### No. 235.

1. COURTS (§ 365*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

Upon the question of the measure of damages in an action in a federal court for breach of a covenant of quiet enjoyment in a lease, the court is governed by the decisions of the highest court of the state where the property is situated, so far as they determine the question.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 955; Dec. Dig. § 365.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**2.** LANDLORD AND TENANT (§ 130*)—EVICTION OF TENANT—MEASURE OF DAMAGES.

The general rule in New York, established by decision, is that for breach of a covenant for quiet enjoyment in a lease the lessee can recover only nominal damages, with nothing for the value of his lease or for improvements. The only exceptions to such rule which call for compensatory damages are in case of fraud, or that which approximates fraud, on the part of the lessor, or in case of fault, or that which amounts to fault, on his part; and his making of the lease with knowledge that he is without full authority to do so does not amount to a fault, unless the lessee is without such knowledge and is misled.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 479; Dec. Dig. § 130.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the Pabst Brewing Company against Charles Thorley to recover damages for an alleged breach of a covenant of quiet enjoyment contained in a lease of certain premises in the city of New York. In the opinion following the parties are designated as in the Circuit Court. Modified and affirmed.

The decision of this court, reversing a judgment sustaining a demurrer to the complaint, is reported in 145 Fed. 117, 76 C. C. A. 87.

Leventritt, Cook & Nathan (David Leventritt, William N. Cohen, and I. Maurice Wormser, of counsel), for plaintiff in error.

Mayer & Gilbert (Julius M. Mayer and A. S. Gilbert, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The principal contentions of the defendant, based upon his assignments of error, are that the trial court erred:

(1) In refusing to submit to the jury the question of the ambiguity in the lease.

(2) In excluding testimony tending to show the intention of the parties in executing the lease.

(3) In charging that the plaintiff was entitled to recover as damages the difference between the rent reserved and the value of the lease for the remainder of the term, together with the value of the improvements.

We have carefully considered the first two contentions of the defendant and are satisfied that the action of the trial court was right in the instructions and rulings complained of. In view, however, of our conclusions with respect to the third contention, we deem it unnecessary to do more than thus state the result of our examination of the others.

The third contention presents the question of the measure of damages in an action for breach of the covenant of quiet enjoyment in the lease. This question must be determined by the law of real estate. And the law of real estate which this court is bound to regard is that established by the course of decisions of the courts of the state in which the land is located—the state of New York. If the law be not settled and established, it will be our right and duty to exercise our

own judgment. But, if it be settled, we must accept the established rules as authoritative declarations of what the law is. When this case was before this court before, it was said:

"Inasmuch as the question presented relates to the rights and title to the real estate and things having permanent locality, it is to be determined by the decisions of the courts of last resort of the state of New York, so far as they determine the questions herein."

So our inquiry here is whether the courts of the state of New York have established a rule of damages in actions of this nature and, if so, what that rule is. It is quite probable, and quite as immaterial, that we may regard the rule which we find settled as opposed to the weight of authority elsewhere and contrary to the soundest principles. It is equally immaterial that, if this case were before the New York Court of Appeals, that court might modify in favor of the plaintiff the rule now established. The plaintiff has brought its suit affecting land in this court, and we must follow settled rules, not change them. Our only duty is to take the law as we find it, and as we find it apply it.

Two theories have long been adopted by the courts in different jurisdictions in determining the rule of damage for breach of the covenant of quiet enjoyment in a deed. In some of the states the covenant —like the covenant of warranty—is assumed to take the place of the ancient warranty of the feudal law, under which, if the vassal were evicted by a better title, he received from his lord other lands of equal value to those which he lost; such value being computed as of the time of the warranty. As that which is now recovered is money instead of land, the same idea is carried out by giving to the party who has lost his land the money he paid for it and thus restore him to his original condition. In other states, and now in England, the covenant is regarded as one of indemnity, and the rule of damages is to restore to the grantee that which he loses by the failure of the grantor to keep his covenant and, consequently, the measure of damages is the value of the property at the time of the eviction without regard to the consideration paid. The first theory is the earlier one; the latter, the one now more generally adopted. 3 Washburn on Real Property, p. 531; 4 Kent's Com. p. 475.

The same theories have been followed in the case of leases. The rent is the consideration paid for a lease, and as a tenant who is evicted is relieved of the rent, it is held in some jurisdictions that he is entitled to recover nothing for the value of his lease or for improvements. Rent paid in advance is, of course, a consideration paid and recoverable. On the other hand, it is held by many courts, upon the principle of indemnity, that such a tenant may recover the value of his lease— the difference between the rent reserved and the value of the term, and also, provided there be no double recovery, expenditures for improvements.

Coming, then, to the decisions in the state of New York, we find that in Staats v. Ex'rs of Ten Eyck, 3 Caines, 111, 2 Am. Dec. 254, decided in 1805, it was held by the Supreme Court that under a covenant for peaceable enjoyment the vendee, if evicted, can recover only the consideration paid and nothing for the increased value of the

property nor for improvements. Chief Justice Kent reviewed the origin of the rule that, in the absence of fraud, "purchaser is not entitled to damages for the fancied goodness of his bargain. The return of the deposit money, with interest and costs, was all that was to be expected."

In Pitcher v. Livingston, 4 Johns. (N. Y.) 1, 4 Am. Dec. 229, decided in 1809, the Supreme Court again laid down the rule of Staats v. Ex'rs of Ten Eyck, supra, upon the authority of that decision and early English cases. In Bennet v. Jenkins, 13 Johns. (N. Y.) 50, decided in 1815, Baldwin v. Munn, 2 Wend. (N. Y.) 405, 20 Am. Dec. 627, decided in 1829, and in several intermediate cases the same rule was reaffirmed and approved.

In Kinney v. Watts, 14 Wend. (N. Y.) 38, decided in 1835, the rule governing the covenant of quiet enjoyment in deeds was applied to leases. The court said (page 41):

"A vendee, when he purchases, may insist upon special covenants, which will secure to him a perfect indemnity for any expenditures or improvements upon the premises, in case of eviction; but if he takes the general covenants of warranty and quiet enjoyment, he has no right to complain that the law does not afford him full compensation for the loss and injury which he has sustained by eviction. If he resorts to an action upon this covenant, he must take the rule of damages which the law has established for a breach of it. A lease, where no purchase money is paid by the lessee, does not differ in principle, in this respect, from an ordinary conveyance in fee for a valuable pecuniary consideration. As the lessee has paid no purchase money, he can recover none back upon eviction; and in respect to the improvements which he may have made upon the premises, and the money expended upon them, he stands precisely upon the same footing with a purchaser, who recovers nothing for improvements or expenditures; nor can a lessee, upon the ordinary covenant for quiet enjoyment."

In Kelly v. Dutch Church of Schenectady, 2 Hill, 105, decided in 1841, the same rule was again stated and applied in the case of a lease, and a lessee evicted by a paramount title was held entitled to recover nothing for improvements or rise in value. The court said:

"Under a general covenant for quiet enjoyment, the rule of damages is settled in relation to a purchaser who has been evicted. He recovers back the consideration money paid for land, with interest on the amount for a period not exceeding six years. The price agreed upon by the parties is taken as the true value of the land without any reference to the actual value. Following that analogy, the rents reserved in a lease, where no other consideration is paid must be regarded as a just equivalent for the use of the desired premises. In case of eviction, the rent ceases; and the lessee is relieved from a burden which must be deemed equal to the benefit which he would have derived from the continued enjoyment of the property. Having lost nothing he can recover no damages. * * * If this rule will not always afford a sufficient indemnity to the lessee, I can only say, as has often been said in relation to a purchaser, he should protect himself by requiring other covenants."

Noyes v. Anderson, 1 Duer (N. Y.) 342, decided in 1852, was a case very like the present one. In that case the defendant leased an office upon premises situated in the city of New York to the plaintiff, with rent payable monthly in advance. The plaintiff duly entered into possession and paid rent. The street inspector of the city tore down the office upon the ground that it constituted an incumbrance upon the

highway. The plaintiff, being evicted, brought an action against the defendant to recover the rent paid in advance and also the value of the lease. It was held that if the street inspector acted by authority of law the existence of such authority and the probability of its being exercised were presumptively as well known to the lessee as to the lessor, and that the recovery must be limited to the rent paid in advance. The court said (page 350):

"The destruction or removal of the building, as both parties must be presumed to have known, * * * was liable to occur at any time on 24 hours' notice. It appears, however, to have been standing, and to have been used for the period of 20 years. To this, so far as the evidence shows, no objection had been made by the municipal officers of the city. We think it is a just conclusion that both parties contracted, the one to rent and the other to hire and pay monthly in advance, on the mutual understanding and expectation that the plaintiff would not be disturbed in the enjoyment of the premises by any action of the city corporation. * * * If the lease had contained covenants of seisin and for quiet enjoyment, and the plaintiff had been evicted by a paramount title, the whole amount which he could have recovered back, in an action upon any of the covenants, would be the moneys paid in advance, deducting therefrom rent at the stipulated rate for such portion of time for which the advance payment was made as the lessee had enjoyed the premises, with interest on such balance. It is regarded as settled law in this state that the ultimate extent of a grantor's responsibility, under any or all of the usual covenants in his deed, is the purchase money, with interest."

In Pumpelly v. Phelps, 40 N. Y. 59, 100 Am. Dec. 463, decided in 1869, the Court of Appeals stated the general rule of the earlier cases, but held that, when a vendor contracts to sell lands in which he knows that he has no title or power of conveyance, he is bound to make good to the vendee the loss of the bargain through his default. This was an action to recover damages for breach of an executory contract to convey, as to the measure of damages in which there has been much discussion and difference of opinion in many jurisdictions. Several New York decisions say that the same rule of damages applies in these actions as in actions upon covenants, but the decisions seem not wholly consistent in this respect.

Pumpelly v. Phelps was limited and distinguished in Burr v. Stenton, 43 N. Y. 462, decided in 1871, and in Margraf v. Muir, 57 N. Y. 155, decided in 1874, and cannot be regarded as authoritative. The following language from the latter decision is especially pertinent in this case:

"In that case [Pumpelly v. Phelps] the vendee did not know that the vendor had no title. Here he did know it."

Mack v. Patchin, 42 N. Y. 167, 171, 176, 1 Am. Rep. 506, decided in 1870, is the leading case upon which the plaintiff must stand to show a modification of the early rule and the exceptions to its application in the case of leases. In that case the court (Earl, C. J.) said:

"In an action by the lessee against the lessor for breach of covenant for quiet enjoyment, the lessee can ordinarily recover only such rent as he has advanced, and such mesne profits as he is liable to pay over; and in cases where the lessor is sued for a breach of a contract to give a lease or to give possession, ordinarily the lessee can recover only nominal damages and some incidental expenses, but nothing for the value of the lease. These rules, however much they may be criticised, must be regarded as settled in this state. But at an early day, in England and in this country, certain cases were declared

to be exceptions to these rules, or, more properly speaking, not to be within them, as, if the vendor is guilty of fraud, or can convey, but will not, either from perverseness or to secure a better bargain, or if he has covenanted to convey, when he knew he had no authority to contract to convey, or where it is in his power to remedy a defect in his title, and he refuses or neglects to do so, or when he refuses to incur expenses which would enable him to fulfill his contract. In all these cases, the vendor or lessor is liable to the vendee or lessee for the loss of the bargain, under rules analogous to those applied in the sale of personal property."

Smith, J., said:

"The plaintiff was clearly evicted from the premises by the act, procurement, and fault of the defendant. He expedited, if he did not instigate, the foreclosure of the mortgage, under which the eviction was had. * * * It would be a gross wrong, if a landlord could thus conspire and assist in turning his tenant out of possession of demised premises, and the latter be limited, in his action upon his covenant for quiet possession, to mere nominal damages."

An examination of this decision shows that the only exceptions to the general rule which the court had in mind were cases where the lessor was at fault or acted in bad faith. In the General Term decision (29 How. Prac. [N. Y.] 20), which was affirmed, the lower court said that the active part which the landlord took in ousting his tenant took "his case out of the rule of damages established for the protection of those who have acted in good faith." Mack v. Patchin was also in a measure distinguished from a case like the present by Burr v. Stenton 43 N. Y. 462, decided in 1871, and already referred to.

In Cockcroft v. N. Y. & Harlem R. R. Co., 69 N. Y. 201, 203, decided in 1877, the court stated the "well-settled rule" of the earlier decisions, and pointed out that the exceptions to it are founded upon the misconduct, fraud, or bad faith of the vendor or landlord. The court said:

"The exceptions to this general and salutary rule are founded on the acts of the vendor which evince knowledge of the existence of the defect, or a want of authority to convey, thereby showing misconduct, fraud, or bad faith in entering into the contract, or in seeking to avoid it for the purpose of obtaining a large price, or an undue advantage to which he is not entitled."

In Dodds v. Hakes, 114 N. Y. 260, 21 N. E. 398, decided in 1889—an action upon a submission in which it appeared that a lessor had failed to give a lessee possession of leased premises—the Court of Appeals used language inconsistent with its earlier decisions which we have noticed. But this language was not necessary to the decision and cannot be regarded as changing the well-settled rule of the earlier cases.

In Walton v. Meeks, 120 N. Y. 79, 23 N. E. 1115, decided in 1890, the Court of Appeals, in speaking of the rule of damages in question, said:

"It is the settled doctrine in this state that, without the aid of fraud or bad faith, nothing can be recovered for improvements made or for the increased value of the premises produced by them."

In Matter of Strasburger, 132 N. Y. 128, 131, 30 N. E. 379, decided in 1892, the court said:

"The lunacy of Strasburger did not discharge or affect his covenants in the leases to the appellants. Matter of Otis, 101 N. Y. 580, 5 N. E. 571. His estate is liable for whatever damages the appellants have sustained because of the breach of the covenant for quiet enjoyment in the leases given to them by him. To the extent of such damages they are general creditors, and entitled to have their claim ascertained in order to be paid in the due course of administration. Id. But the question is: What is the measure of their damages? The appellants claim that it is the value of the unexpired term, less the rents reserved. This would be so if the breach of the covenants for quiet enjoyment resulted from the fault of Strasburger. Mack v. Patchin, 42 N. Y. 167, 1 Am. Rep. 506. But the general rule is, in the absence of fault in the lessor, that the lessee can recover only such rent as he has advanced, and such mesne profits as he is liable to pay over. Id. See Walton v. Meeks, 120 N. Y. 79, 23 N. E. 1115."

In Doctor v. Darling, 68 Hun, 70, 74, 22 N. Y. Supp. 594, 596, decided in 1893, the Appellate Division for the First Department said:

"Upon a breach of a covenant of seisin or quiet enjoyment the value or expense of improvements made by the evicted grantee cannot be recovered as a part of his damages."

Friedland v. Myers, 139 N. Y. 432, 436, 438, 34 N. E. 1055, 1056, decided in 1893, is the last decision upon the subject by the Court of Appeals, and is particularly relied upon by the defendant. This was an action for the breach of the covenant of quiet enjoyment in a lease. The plaintiff leased of the defendant certain premises to be used as a drug store and made expenditures for contemplated improvements. When he sought to take possession at the beginning of the term, the tenant then in possession kept him out upon the ground that his lease had not expired, and it was so adjudged in proceedings to dispossess him brought by the defendant. It was held that the plaintiff was entitled to recover the expenditures for the contemplated improvements. The court said:

"Anciently the rule was that, where the lessor was sued for a breach of a covenant to give possession, the lessee could, ordinarily, recover only nominal damages and incidental expenses, but nothing for the value of the lease; but this rule was not made applicable to a case like the present, where he covenanted to give possession, when he must be deemed to have known that he had no authority to do so, and the lessor would then be held liable to the lessee for the loss of the bargain. * * * It need not be questioned that the defendant acted in good faith. He evidently misjudged as to the legal effect of the transaction with the occupant, and did not understand that it created a tenancy for another year; but it was so adjudged in the proceedings brought to dispossess him, and the consequence of the defendant's mistake must be borne by him, and cannot justly be visited upon the plaintiff."

In view of the facts in the Friedland Case, it seems clear that the Court of Appeals was merely applying, and not altering, the principles of its earlier decisions. The landlord was held liable for substantial damages, because he acted with knowledge of the facts, and the tenant without knowledge. The parties did not stand in the same position. While bad faith was not shown, the fault and mistake were wholly those of the lessor, and not those of the lessee, and the former was only held responsible for expenditures which the latter was deceived into making. But we see nothing in the decision indicating an intention upon the part of the Court of Appeals to change its decision of

the preceding year (Matter of Strasburger, supra) that the rule is, "in the absence of fault in the lessor" that the lessee can recover only nominal damages.

The plaintiff seeks to found upon this decision in the Friedland Case an exception to this rule in a case where "a person undertakes to let premises which he has no right to let." But such an exception would be as broad as the rule. There can be no breach of the covenant of quiet enjoyment if the lessor have the right to let, and if compensatory damages are to be awarded in all cases where there is no such right there can never be a case for nominal damages. Nor do we think this decision—or the decision in the Mack Case, supra—authority for the proposition that knowledge on the part of the lessor of his want of full authority to let makes out an exception to the rule of nominal damages, unless the lessee is without the same knowledge and is misled.

This examination of the course of decisions in the state of New York leads us to these conclusions:

(1) That the rule of the early decisions fixing the measure of damages for breach of the covenant of quiet enjoyment in a lease is still the general rule in that state, well settled and established.

(2) That under this general rule a tenant who has not paid in advance can, upon eviction by superior title, recover only nominal damages, and can recover nothing for the value of his lease or for improvements.

(3) That exceptions to this general rule which call for compensatory damages arise: (a) In case of fraud, or that which approximates fraud, on the part of the lessor. (b) In case of fault or that which amounts to fault upon the part of the lessor; but the execution of a lease by the lessor with knowledge that he is without full authority to do so, does not amount to a fault unless the lessee is thereby misled.

These conclusions with respect to the rule in New York seem to be in accord with the conclusions reached by text-writers who have examined the authorities. Thus in Reeves on Real Property—a very recent work—the author, a professor in a New York law school, says (volume 2, p. 827):

"* * * Now in England and most of the states of this country (though the rule was formerly less favorable to the lessee) he may recover, in such an action, the total loss which he has suffered; that is, the remaining value of the lease to him—the value of the unexpired term less the rent reserved. But in a few of the states, such as New York and Pennsylvania, it is held that in the absence of fault on the part of the landlord, or other special circumstances, the termination of the tenant's duty to pay rent sufficiently compensates him for the loss of his term."

In a note to the foregoing paragraph it is said:

"This severe rule arose from that as to covenants for quiet enjoyment in conveyances in fee; and it yields to a demand for more adequate damages when the landlord is at fault, or might have prevented the eviction, or otherwise is fairly obligated in a larger amount."

In Taylor on Landlord and Tenant (9th Ed., published in 1904) p. 386, note, it is said:

"The later cases in New York hold that, in the absence of fault upon the part of the lessor, the lessee can recover for a breach of a covenant of quiet

enjoyment only such rent as he has advanced and such mesne profits as he is liable to pay over."

See, also, 18 Am. & Eng. Ency. of Law (2d Ed.) pp. 628, 629; Rawle on Covenants of Title (5th Ed.) § 164; Brightley's notes to Duvall v. Craig, 2 Wheat. 63, 4 L. Ed. 180.

Examining the record in the present case, we find nothing to bring it within the exceptions to the New York rule. The plaintiff itself states in its complaint that the premises from which it was evicted belonged to the city of New York, "of which ownership the plaintiff was fully aware and had notice before entering into said lease." The plaintiff was in no way misled by any act of the defendant. There was no fraud, nor anything approximating it, upon his part. Nor was there any fault or wrongdoing. Both parties were fully advised as to the true conditions. They knew that the city could take possession at any time, but believed that it would not do so and acted accordingly—the plaintiff taking and holding possession under the lease for a considerable period. They were in the situation of the parties in the case of Noyes v. Anderson, 1 Duer (N. Y.) 342, already referred to, in which substantial damages were refused, and in which it was said that they contracted the one to rent and the other to hire the city property "on the mutual understanding and expectation that the plaintiff would not be disturbed in the enjoyment of the premises by any action of the city corporation."

It follows, from these conclusions as to the proper measure of damages, that the instructions of the trial court upon the subject were erroneous. Upon the undisputed facts, the judgment should have been for nominal damages only. Consequently, to correct the error, we are called upon to modify, rather than to reverse, the judgment.

The judgment is modified, by reducing the amount thereof to the sum of one dollar, nominal damages, without costs, and, as so modified, is affirmed. As the judgment is not reversed, we have concluded to allow no costs to either party in this court.