COMMISSIONER OF BANKS *in re* HANOVER TRUST COMPANY *vs.* JORDAN MARSH COMPANY & others.

Suffolk.   March 6, 1922. — April 20, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust Company,* "Christmas Club," Savings department. *Commissioner of Banks.*

Deposits known as a "Christmas Club" were made in a trust company regularly during twelve months beginning in December, the money to be withdrawn at Christmas. The depositors were referred to as members. They became such by making application and by signing a depositor's signature card which was kept by the company. The applicant was then given a Christmas Club book on which were written his name and address and which contained fifty-one coupons, calling for fifty deposits, the last coupon showing the amount paid. The depositor had a choice of five classes of Christmas Club deposits, namely, a $.25, $.50, $1, $2, and a $5 class, the designation of the class meaning that

the respective sums were to be deposited each week for fifty weeks. Interest at the rate of three per cent was allowed on the total. A separate account with each Christmas Club depositor was not carried upon the books of the trust company, but the aggregate deposits were entered to the credit of the Christmas Club in an individual ledger and were included with the funds, so called, of the banking or commercial department. Such deposits were solicited through advertisements in the public press and by agents employed to secure savings accounts. The company maintained both a savings department and a banking or commercial department, and members regarded their deposits as savings. The rules of the Christmas Club provided that the book must be presented when making a deposit, that there could be no withdrawals before the final due date, and that the book must be surrendered immediately afterwards. The property and business of the trust company were taken possession of by the commissioner of banks under G. L. c. 167, § 22. *Held,* that under G. L. c. 172, §§ 60-62; c. 167, § 16, the Christmas Club deposits should be placed in the savings department of the trust company and should be treated as savings deposits in the liquidation of the company.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 18, 1921, and afterwards amended, by the commissioner of banks in possession of the property and business of the Hanover Trust Company of Boston, seeking an instruction "that the 'Christmas Club,' so called, is a savings account and that the amount representing the Christmas Club deposits, now in the commercial department of that trust company, be transferred to the savings department or be held for the benefit of the Christmas Club depositors and distributed to them out of the commercial department."

Material allegations of the amended bill are described in the opinion. The suit was reserved by *Crosby,* J., upon the bill, answers of Jordan Marsh Company and the trustees in bankruptcy of Charles Ponzi and an agreed statement of facts, for determination by the full court.

*F. H. Smith, Jr.,* for the commissioner of banks.

*P. B. Buzzell,* for Jordan Marsh Company, filed a brief in support of the commissioner's contentions.

CARROLL, J. This bill is brought by the commissioner of banks to determine the status of certain deposits known as Christmas Club deposits, and to determine, in the liquidation of the Hanover Trust Company, if they are to be treated as savings deposits. The defendant Jordan Marsh Company is the assignee of a number of Christmas Club accounts, which it took over at their face value from its employees after the bank closed.

The title "Christmas Club" has been given to a type of deposits made in accordance with a plan which provides for the making of regular deposits during the year and the withdrawal of the money for use at Christmas. The bill deals with the Christmas Club of 1920, which began in December, 1919. The depositors therein were referred to as members, and they became members of the Christmas Club in the Hanover Trust Company by making application and by signing a depositor's signature card which was kept by the company. The applicant was then given a Christmas Club Book on which were written his name and address; it contained fifty-one coupons, calling for fifty deposits, the last coupon showing the amount paid. The depositor had a choice of five classes of Christmas Club deposits, namely, $.25, $.50, $1, $2, and a $5 class, the designation of the class meaning that the respective sums were to be deposited each week for fifty weeks. Interest at the rate of three per cent was allowed on the total. A separate account with each Christmas Club depositor was not carried upon the books of the trust company, but the aggregate deposits were entered to the credit of the Christmas Club in an individual ledger and were included with the funds, so called, of the banking or commercial department. Christmas Club deposits in the Hanover Trust Company were solicited through advertisements in the public press and by agents employed to secure savings accounts. As a result of these advertisements and solicitations, deposits in the trust company for Christmas, 1920, amounted to $188,201.66. The company maintained both a savings department and a banking or commercial department, and according to the agreed facts Christmas Club depositors in the Hanover Trust Company regarded their deposits as savings.

The relevant statutes are St. 1908, c. 520, §§ 1, 2, 3; G. L. c. 172, §§ 60, 61, 62; St. 1919, c. 37; G. L. c. 167, § 16. Section 1 of c. 520 of St. 1908, enacts, in substance, that every trust company receiving deposits which are to be withdrawn only on presentation of the passbook or other similar receipt permitting deposits and withdrawals to be entered thereon, or which at the option of the trust company may be withdrawn at the expiration of a stated period after notice, or in any way where the public might be led to believe that such deposits are received under the same conditions as deposits in the savings bank, shall have a

savings department; by § 2, such deposits shall be placed in the savings department; and by § 3, such deposits shall not be mingled with other money of the corporation. St. 1919, c. 37, authorized trust companies in their savings department to receive deposits at intervals within a period of twelve months and to pay interest thereon.

The rules of the Christmas Club in the Hanover Trust Company provided that the book must be presented when making a deposit, that there could be no withdrawals before the final due date, and that the book must be surrendered immediately afterwards. The Christmas Club deposits therefore were not like commercial deposits which could be withdrawn at will; they could be withdrawn only at stated times, and the book was required to be surrendered to the bank immediately after the due date. See *Burrows* v. *Burrows,* 240 Mass. 485. In these circumstances we think it plain that the deposits were within the express provisions of St. 1908, c. 520, §§ 1 and 2. They were to be placed in the savings department and not mingled with the other money of the corporation, and were in fact savings deposits.

In addition to this it appears that the deposits were solicited and received by the trust company in a manner which led the public to believe they were received as savings deposits. They were solicited through advertisements and by agents employed to secure savings accounts and were regarded by the depositors as such; and the printed statement on the coupon in the deposit book would naturally lead the depositor to believe that they were savings deposits. We are also of opinion that St. 1919, c. 37, was intended to apply to deposits of this type which are to be received by the trust company in their savings department.

It follows that the Christmas Club deposits in the Hanover Trust Company must be considered as savings deposits and treated as such in the liquidation of that company.

*Decree accordingly.*