In the Matter of JOSEPH F. HAHER, Respondent, against WALTER G. HAMILTON, Individually and as Treasurer of the County of Rockland, Appellant.

(Submitted April 17, 1935; decided May 21, 1935.)

*E. W. Hofstatter* and *Walter A. McDermott* for appellant.

*Harry H. Hoffnagle* for respondent.

CROUCH, J. On June 7, 1933, the County Judge of Rockland county appointed Joseph F. Haher as referee pursuant to the provisions of section 1379 of the Civil Practice Act and subdivisions 2 and 3 of section 1384-i of the Civil Practice Act, to examine the inventories and accounts filed or required to be filed in accordance with section 1378 of the Civil Practice Act by the committees of incompetent persons (1) since February 1, 1932; and (2) for each year subsequent to 1900 not previously examined or judicially settled. By the terms of the order all committees who had failed to file their accounts and inventories were required to present the same to the referee, together with vouchers for all expenditures set forth in said accounts; and the referee was directed to examine said vouchers as well as the assets in connection with his examination of the inventories and accounts; he was further authorized to hold hearings in each committeeship, with power to take the oral testimony of any

person and to issue subpœnas; finally he was directed to report in writing to the court his findings with his opinion in each case.

Under date of August 31, 1933, the referee submitted to the County Judge of Rockland county a general report stating the principles of law upon which he had acted, and the scope and character of the examination made by him. In connection with that general report there was submitted a separate report covering each individual case examined.

Among others was the case of Matilda Carpenter, as committee of Idel Carpenter, an incompetent. The individual report in that case shows that the referee was attended by the agent of the committee; that he took the testimony of the agent under oath in regard to many matters; and that he stated the account and submitted a summary thereof running back to and including the calendar year of 1927. The proceeding was in substance the same as if the committee had been called upon to render an intermediate accounting.

Upon the report an order of confirmation was made and the referee was granted an allowance of $100 as compensation for services, together with the further sum of $15.75 for necessary disbursements. Since the amount of the estate was less than $5,000, the order of confirmation provided that it should be a warrant to the Treasurer of Rockland county to make payment of the above amounts in accordance with section 1379 of the Civil Practice Act. The County Treasurer refused to honor the order, whereupon this mandamus proceeding was brought to compel payment. The proceeding took the form of a submission of controversy to the Appellate Division.

It appears from the facts submitted that the inventories and accounts in the Carpenter committeeship for the calendar years of 1927 and 1928 had been examined by a previous referee whose report had been confirmed, and who had been paid for his services and disbursements. It also appears that the inventories and accounts of the

committee for the succeeding calendar years of 1929 to 1932, inclusive, had not been previously examined.

The submission suggested four questions arising upon the facts stated. They were in substance as follows: (1) Was the County Judge empowered to appoint a referee to examine accounts filed prior to February of the preceding year? (2) Was he empowered to authorize the referee to take testimony or merely to make examination of the accounts without the power to take testimony? (3) Was he empowered to authorize the referee to examine accounts for years which had been previously examined to the extent set forth in the submission? (4) Is the relator entitled to an order of mandamus directing the County Treasurer to pay the sums allowed for services and expenses?

The Appellate Division without opinion sustained the order of the County Judge in all particulars, and as matter of law, and not in the exercise of discretion, directed the County Treasurer to pay the referee.

There can be no doubt that the work of the referee was thorough, conscientious and workmanlike. The allowance was moderate for the services rendered. The difficulty, however, is that the examination actually made exceeded the scope of the examination contemplated by the statute.

The County Court has jurisdiction over the persons and property of resident incompetent persons. (Civ. Prac. Act, § 67, subd. 4.) It is, therefore, its duty to preserve such property from waste or destruction and out of the proceeds thereof to provide for the payment of debts and for the safe-keeping, maintenance and education, when required, of the incompetent person and his family. (Civ. Prac. Act, § 1357.) That jurisdiction is exercised by means of a committee (Civ. Prac. Act, § 1358) who acts as a bailiff under the direction of the court. (*Matter of Otis*, 101 N. Y. 580.) To the end that the court may know what the bailiff is doing with the

property intrusted to him, the statute (Civ. Prac. Act, § 1378) requires him to file in the month of January in each year an inventory, account and affidavit in the form and manner required of the general guardian of an infant's property in the Surrogate's Court. A reference to section 190 of the Surrogate's Court Act will show that the data demanded by the statute is full and complete, including, if so required, production of vouchers and securities or evidence of deposit or investment. Having been furnished this information, it is made the duty of the specified judge to examine it or cause it to be examined under his direction. It is not the intent of the statute that the examination be in the nature of an accounting. In form it is *ex parte* and binding upon nobody. In purpose it is merely exploratory and precautionary. (*Matter of Hawley*, 104 N. Y. 250; *Matter of Arnold*, 76 App. Div. 126.) If the inventory and account in form and contents comply with the provisions of law, they will be sufficiently full to enable the judge or a competent referee to know the condition of the estate with certainty. Beyond the examination of the inventory and account and the property or securities, the referee, we think, may not go. We find no authority for an examination of the committee under oath by the referee. If the examination by the referee reveals the necessity or desirability of a more full or satisfactory inventory or account, his duty is to embody that view in a report to the judge, and the judge may thereupon make an order requiring the committee to supply the deficiency. Or if the examination of the committee or any other person under oath is deemed necessary by the judge in a particular case, there is ample power (Civ. Prac. Act, § 1377) in the court to require it. To issue a blanket order directing a referee to hold hearings and to examine witnesses in his discretion in connection with the annual examination of each inventory and account filed is, we think, beyond the power of the judge. It would put a

heavy and unjustifiable burden of expense upon estates of incompetents and, in the case of estates under $5,000, upon the public purse.

In the actual course of administration it may very well happen that a committee has been delinquent in filing the annual inventory and account. It may even happen that the judge has inadvertently omitted to examine or cause to be examined an inventory and account actually filed. It is the duty of the referee to ascertain whether a committee has been delinquent and to report that fact, if found, to the judge, who in turn may order the deficiency supplied. Where there has been an omission to examine an inventory and account actually filed, it is clear that the judge may direct the referee to examine such unexamined inventory and account. The statute contemplates an examination in every case. The direction for an annual filing and examination does not constitute a statute of limitation.

Ordinarily it is no part of the duty either of the judge or of the referee to examine inventories and accounts once they have been examined and passed. Since, however, the examination of inventories and accounts is *ex parte* and binding upon nobody, there seems to be no reason why the judge himself or the referee, if occasion arises, should not resort for information to inventories and accounts which have been examined and passed. Any defect or deficiency therein will necessarily be reflected in the inventory and account under investigation.

This interpretation of the statute in respect to the powers of the referee and the nature and scope of his examination is necessarily generalized. We must deal with specific instances when they arise.

The essential point, however, is that the function of the referee is to ascertain in the manner above stated whether or not the court's bailiff is living up to his duties and to report accordingly to the judge. What happens thereafter may be left to the court.

The specific questions may be answered as follows: (1) The County Judge was empowered to appoint a referee to examine accounts filed prior to February of the preceding year, provided they had not already been examined. (2) He was not empowered to authorize the referee to take testimony. (3) He was not empowered to authorize the referee generally to examine accounts for years that had been previously examined; but in any specific instance for good cause shown he was empowered so to authorize the referee. (4) The relator is not entitled on this record to an order of mandamus, since the allowance in part covered services rendered beyond the scope authorized by law.

The order of the Appellate Division should be reversed and the proceeding dismissed, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Order reversed, etc.